UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| KEITH COTTLE, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-CV-344-HBG |
| | ) | |
| NORFOLK SOUTHERN RAILWAY COMPANY, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 22].

Now before the Court is Defendant's Motion for Summary Judgment [Doc. 31]. The Motion is ripe for adjudication. Accordingly, for the reasons set forth below, the Court finds Defendant's Motion [**Doc. 31**] well taken, and the same will be **GRANTED.**

**I.    BACKGROUND**

This action arises under the provisions of the Federal Employers' Liability Act, 45 U.S.C., §§ 51 et seq. Plaintiff worked for Defendant from 1992 to April 29, 2016, when he was terminated. [Doc. 31-1 at 3]. Plaintiff claims that on April 29, 2016, he was injured when making repairs to a freight car. Specifically, Plaintiff alleges that he was underneath the car when without warning, the car shifted about eight inches at his location. [Doc. 1 at ¶ 14]. Plaintiff scrambled to get out from under the car when his hard hat struck the car. [*Id.* at ¶¶ 15-16]. Plaintiff alleges his injury was caused by Defendant's negligence. [*Id.* at ¶ 23]. He further pleads as follows: (1) Defendant

failed to furnish Plaintiff with a reasonably safe place in which to work; (2) Defendant failed to furnish Plaintiff with reasonably safe equipment with which to perform his assigned duties; (3) Defendant failed to furnish Plaintiff with reasonably necessary and proper personal protective equipment; (4) Defendant failed to furnish Plaintiff with necessary and proper supervision in the performance of his assigned duties; (5) Defendant failed to properly train employees in operation of electric hydraulic jacks; (6) Defendant failed to warn Plaintiff of reasonably foreseeable hazardous conditions existing with Defendant's equipment; (7) Defendant allowed unsafe practices to become the standard practice; and (8) Defendant failed to provide Plaintiff with the proper tools and equipment. [*Id.* at ¶ 24].

The primary dispute between the parties is whether this injury actually occurred. Plaintiff claims that he was injured during the stabilization process, while Defendant denies that Plaintiff was injured. According to Plaintiff's deposition testimony, on the day of the alleged incident, April 29, 2016, Plaintiff was working with Samuel Sifers ("Sifers"), and their assignment was to repair a freight car. [Doc. 31-1 at 10]. Plaintiff testified that he participated in the jacking of a railroad car over hundred times prior to the incident and that he knows how to do it. [*Id.* at 13].

Plaintiff testified that on April 29, his specific assignment was to change the inside wheelset on a locomotive at the L-3 location. [*Id.* at 12]. Plaintiff testified that prior to changing the inside wheel, he performed safety lifts as required. [*Id.* at 24]. Safety lifts entail raising the jacks to various heights and letting them down to ensure that there are no problems. [*Id.*]. Plaintiff explained, "We would apply weight to the base with the weight of the car. That weight would stay on the jack pads and the jacks for three minutes." [*Id.*]. Plaintiff stated, "After three minutes, the car is lowered, and paying close attention to your jacks to determine if there's any movement inward, outward, side to side." [*Id.*]. Plaintiff stated that he and Sifers performed three safety lifts, and there were no problems. [*Id.* at 83].

Plaintiff clarified during his deposition, "At the third safety lift prior to the freight car clearing the center pin—before it clears the center pin is when you can check for tension against the center pin in either direction, side to side, forward reverse." [*Id.* at 25-26]. Plaintiff stated that the car sat for three minutes, and then he went under the car to check the tension against the center pin. [*Id.* at 26]. Before he could check the tension on the center pin, the car shifted to the right side at his location about eight inches. [*Id.* at 27, 34]. Plaintiff yelled, "The car is falling." [*Id.* at 32]. Plaintiff stated that when he raised up, he struck the top of his hard hat on the frame of the car. [*Id.*].

Plaintiff testified that he and Sifers assessed what took place, and Sifers looked underneath the car and saw that the center pin was bent. [*Id.* at 41]. Plaintiff testified that after the incident, he saw the left side jack leaning inward, but the right side jack appeared to be level or straight up. [*Id.* at 33]. The left side jack was not bent but was leaning. [*Id.*]. Plaintiff testified that this incident occurred when he was testing the car as opposed to pushing the truck out. [Doc. 56-1 at 26]. Plaintiff stated that after the incident, he got under the car again. [*Id.* at 27]. Plaintiff stated that later when he was putting away the supplies, he noticed a tear in the aluminum pad about four inches in length perpendicular to the rail. [*Id.* at 37]. Plaintiff acknowledged that he did not report his injury to Defendant. [*Id.*].

As mentioned above, Defendant disputes that the incident occurred. Defendant claims that on April 29, 2016, Plaintiff and Sifers changed the outer wheelset. Whether Plaintiff and Sifers were changing an inner wheelset (as Plaintiff originally testified) or the outer wheelset (as Defendant alleges) is important because both parties acknowledge that Plaintiff would not go underneath the car if he was repairing the outer wheelset. *See* [Doc. 31-1 at 33] (Plaintiff testifying

3

that he would not need to get underneath the car if he was changing the outer wheelset).[1] Plaintiff explained during his deposition the procedure for changing the outer wheelset:

> We apply chains capable of lifting the side frames. The jacks are still applied to the side of the car. We'll raise the jacks with chains applied to the front of a side frame, hooked to the side frame. As the car goes up, so does the side frame, which allows the wheel to come out on its own.

[Doc. 56-1 at 18] (hereinafter, the "Chain Method"). When using the Chain Method, the center pin does not need to be removed. [*Id.*].

In its Motion, Defendant submits the testimony of Sifers, who claims that he never saw Plaintiff go underneath the car. [Doc. 31-2 at 9]. Sifers claims that on the date of the incident, he and Plaintiff were changing the outer L4-R4 wheelset and not the inner L3-R3 wheelset. [*Id.* at 11-13]. Further, Defendant submitted an email from Plaintiff to his supervisor, Wayne Strickland, dated April 25, 2016, a few days prior to the alleged incident, which states, "Called to inspect 2nd from rear car train 175, critical hot box at R-4 location. Shop found AEX 994 L/L with adapter sitting on top end cap @ R-4 location . . ." [Doc. 31-3 at 17]. In addition, the Repair Track Inspection Sheet for the AEX 000994 rail car shows that a wheel repair at the R-4, L-4 location was made on April 29, 2016. [Doc. 31-1 at 14].

Sifers testified that the car never moved, Plaintiff did not hit his head, and the jack was not leaning. [Doc. 31-2 at 14]. Sifers testified that if the car leaned eight inches, it would have fallen off the jacks and landed on the ground. [*Id.*]. Sifers testified that it is never necessary or appropriate for anyone to be underneath the rail car when the car has been jacked. [*Id.* at 12]. Sifers testified that getting underneath the car is a terminable offense and that if Plaintiff went

---

[1] To be clear, Defendant states that Plaintiff should not be underneath the rail car even if he was changing the outer wheelset. [Doc. 32 at 12].

4

underneath the car, Sifers would have told him to get out from underneath. [*Id.*]. Sifers also testified that there were no tears in the aluminum pads. [*Id.* at 15]. Sifers testified that if there were tears, Defendant would have investigated the tears and replaced the jack pads. [*Id.*]. During his deposition, Sifers testified that the aluminum jack pads were in the room, they were no tears in either pad, and they were still in use today. [*Id.* at 16-17].

Finally, Defendant's industry expert, Michael Chambers, stated as follows:

> Plaintiff claims that the car titled 8 inches, or the jack leaned 8 inches, and if this happened, the car would have fallen. The titling of the car and the jack leaning 8 inches could not have happened and would be an impossibility. The jack head is 5 and 1/8 inches in diameter, so if the car is off the center of the jack head by approximately 3 to 4 inches, the law of physics dictates that the car will come off the jack and fall.

[Doc. 34-1 at ¶ 6]. Chambers stated, "In fact, the jacks remained in service and would have been taken out of service just like the pads would have been taken out of service if they were bent or torn in any way. Instead, the jacks continued to be used in service." [*Id.*]. Further, Strickland testified that the first time Defendant received notice of the injury was when Plaintiff filed his lawsuit—that is, approximately two years after it allegedly occurred. [Doc. 31-3 at 14].

In response to Defendant's Motion, Plaintiff appears to concede that he and Sifers were not changing an inner wheelset on the date of the incident. He submits an affidavit, explaining:

> 3. At my deposition, I knew we had to remove the entire truck to get the damaged wheel set out, but I could not remember why. After I had a chance to review an actual picture of the subject car (AEX000994 L/L) a covered hoper, I remembered this car was not designed to use chains to remove the front wheel set.
>
> 4. Most rail cars have the angle iron built into the frame of the car, to allow you to hook a chain from the side frame up to the angle iron. This car was not designed like that.

5

> 5. To use the chain method on this car would have been a violation of Norfolk Southern General Rule 30 and General Safety Rule 1200.

[Doc. 44-3 at ¶¶ 3-5]. Plaintiff also filed an affidavit of C.F. (Tom) Rader [Doc. 44-4], stating the same.[2] Rader states that he has over forty (40) years of experience as a Norfolk Southern carman and that he has worked in the shop and on the line of road. [*Id.* at ¶ 1]. Plaintiff claims that the jack gave way under the pressure of the lift and relies on the doctrine of res ipsa loquitur. [Doc. 44 at 7]. Further, Plaintiff argues that there is no way to establish that the aluminum pads brought to the depositions are the same ones that were in use in April 2016.

In its Reply, Defendant claims that the incident as alleged is physically impossible and relies on Michael Chamber's affidavit in support of its position. *See* [Doc. 34-1 at ¶ 6] and [Doc. 56-5]. Further, Defendant submits that the sworn statement of Terry Holloway, Defendant's former Safety Trainer and Coordinator for the Safety Division, who opined that if one jack leans, as Plaintiff described, the other jack would lean. [Doc. 56-4 at 14]. Further, Defendant submitted evidence that the Chain Method could have been used because it was done on the exact design NS641098 H54 covered hopper rail car. Specifically, Christopher Shorts, Defendant's Manager of Car Maintenance Mechanical, provides as follows:

> 6. It is my experience that the No. 4 outer wheel set can be removed using an accepted and approved chaining methodology, which Mr. Chambers supervised being performed on the NS 641098. I am familiar with H54 covered hoppers, which look identical on the A-frame side. Based on my review of this historical information, the railcar records maintained by Norfolk Southern, the records of the AEX 994, as well as my personal knowledge and extensive familiarity with H54 covered hoppers, the AEX 994 and the exemplar NS 641098 are the exact same model of car, built by the exact same manufacturer, Pullman-Standard, of the exact same build year, and of the exact same design, including holes in the A-side shear plate that can be utilized as Mr. Chambers did with the

---

[2] As explained below, Defendant objects to Plaintiff's and Rader's affidavits.

> exemplar to chain the frame and move/replace the 4th outer wheel set without removing the truck and without getting underneath the jacked covered hopper. Based on the design of the identical H54 exemplar and AEX covered hoppers, Mr. Cottle never needed to push the truck out from underneath the jacked H54 covered hopper to remove and replace the 4th outer wheel set because the chaining method could be used on both cars utilizing the holes that were specified by Pullman-Standard in the shear plate for its H54 Ps-2CD covered hoppers, including the exemplar and the AEX. The chaining method does not violate Norfolk Southern rules (in fact, the General Rule 30 cited by Mr. Cottle, was not even in effect in 2016 nor is it currently).

[Doc. 56-6 at ¶ 6].

## II. STANDARD OF REVIEW

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be

material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the finder of fact. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter, *id.* at 249, or search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

## III. ANALYSIS

Accordingly, the Court has considered the filings in this matter, and for the reasons further explained below, the Court will **GRANT** Defendant's Motion [**Doc. 31**].

### A. Overview of the Federal Employers' Liability Act

Plaintiff brings this suit pursuant to the FELA. The FELA is a "remedial and humanitarian statute that was specially enacted by Congress to afford relief to employees from injury incurred in the railway industry." *Edsall v. Penn Cent. Transp. Co.*, 479 F.2d 33, 35 (6th Cir. 1973). The FELA provides:

> Every common carrier by railroad while engaging in [interstate] commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.

45 U.S.C. § 51. The FELA should be "liberally construed in favor of the injured plaintiff." *Green v. River Terminal Ry. Co.*, 763 F2d 805, 806 (6th Cir. 1985). Further, it is well established that "in comparison to tort litigation at common law, a relaxed standard of causation applies under the FELA." *Seto v. CSX Transportation, Inc.*, No. 3:15-CV-1135, 2017 WL 4556723, at *7 (M.D. Tenn. July 6, 2017) (internal quotations omitted). This relaxed standard, however, does not affect a plaintiff's obligation to prove that the defendant was negligent. *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 269 (6th Cir. 2007) ("FELA does not lessen a plaintiff's burden to prove the elements of negligence.").

Before turning to the merits, the Court notes that Defendant has objected to Plaintiff's affidavit, Rader's affidavit, and Plaintiff's new theory, which Defendant argues was developed at the eleventh hour. Defendant requests that the Court strike Plaintiff's affidavit, arguing that it is a sham affidavit. In addition, Defendant asserts that the Court should not consider Rader's testimony because he should have been disclosed as an expert. Further, Defendant argues that Plaintiff should not be able to rely on res ispa loquitur. Defendant continues that Plaintiff should not be able to rely on any of the above evidence or theory because they "effectively undermine[] the framework and context of nearly all Defendant's pretrial discovery efforts." [Doc. 56 at 15]. Further, Defendant states that Plaintiff should be sanctioned, including the dismissal of this case, for spoliation of evidence because Plaintiff did not report his injury and the AEX994 was scrapped before the lawsuit was filed.

The Court agrees with Defendant that the timing of Plaintiff's new theory and evidence is unfair, especially because the discovery deadline was a few weeks away when Plaintiff disclosed this new information. The Court further notes that some of Plaintiff's new evidence is somewhat

9

problematic.[3] Nevertheless, the Court has considered all the evidence submitted by both parties, and the Court finds that there are no genuine issues of material fact.

The Court will first address Plaintiff's reliance on res ipsa loquitur.

B. **Res Ipsa Loquitur**

In response to the Motion for Summary Judgment, Plaintiff resorts to res ipsa loquitur, claiming that the jack gave way under the pressure of the lift. [Doc. 44 at 7].[4] Defendant concedes that res ipsa loquitur applies to FELA cases. *See Miller v. Cincinnati, N. O. & T. P. Ry. Co.,* 203 F. Supp. 107, 112 (E.D. Tenn. 1962), *aff'd*, 317 F.2d 693 (6th Cir. 1963) ("It has been repeatedly held that res ipsa loquitur applies to FELA cases."). As the Seventh Circuit recently explained, "Res ipsa loquitur describes not a substantive claim, but a manner of proceeding on that claim." *Ruark v. Union Pac. R.R. Co.,* 916 F.3d 619, 625 (7th Cir. 2019). The Court noted, "[T]he cost of admission to this plaintiff-friendly, burden-shifting doctrine requires a plaintiff to make some

---

[3] For instance, Defendant objects to Plaintiff's and Rader's affidavits. Defendant argues that Plaintiff's affidavit was submitted to create a sham issue of fact and that Rader should have been disclosed as an expert. The Court notes that the statements made in Plaintiff's affidavit are suspect. During his deposition, Plaintiff claimed that he was changing the inner wheelset, which is why he went underneath the car. After Defendant moved for summary judgment, producing documents showing that the inner wheelset was changed on April 29, 2016, Plaintiff filed an affidavit stating that the design of the rail car prohibited him from using the Chain Method. Plaintiff explains that he remembered that he needed to go underneath the car after he saw a picture of the car, but he was shown a picture during his deposition of the exemplar NS641098, which is similar to, if not identical to, the AEX 994 car. *See Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991) (explaining that a plaintiff cannot file an affidavit or declaration that directly contradicts his/her own prior deposition testimony). Further, the admissibility of Rader's statements is also questionable given that he appears to rely on his specialized knowledge, and he was not disclosed as an expert.

[4] In Defendant's Motion for Summary Judgment, it argues that Plaintiff "has come forward with no evidence on what caused the jack to lean, and he has not pled res ispa," and therefore, he "cannot proceed on [that] theory." [Doc. 32 at 26]. In response, Plaintiff states that res ispa loquitur applies.

significant preliminary showings." *Id.*; *see also Consol. Rail Corp., v. Gottshall*, 512 U.S. 532, 543-44 (1994) ("We have insisted that FELA does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur.").

The Supreme Court further explained the doctrine as follows:

> When a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such, as in the ordinary course of things, does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care.

*Id.* at 626 (quoting *Jesionowski v. Boston & M.R.R.*, 329 U.S. 452, 456 (1947)). In order to establish a res ipsa loquitur claim, a plaintiff must show as follows:

> 1) The injury must be one that does not ordinarily occur absent negligence; (2) the injury must have been caused by some agency or instrumentality in the exclusive control of the defendant; and (3) the injury must not have been due to any contribution or voluntary activity on the part of the plaintiff.

*Ruark*, 916 F.3d at 626 (quoting *Robinson v. Burlington N. R.R. Co.*, 131 F.3d 648, 652 (7th Cir. 1997)). The second and third factor are "two sides of the same coin." *Id.* at 627.

Here, Defendant disputes all three elements. Plaintiff states that the "jack was in the hands of the Railroad, since [its] employee Mr. Sifers was handling the controls." [Doc. 44 at 7]. In support of his argument, Plaintiff cites his deposition testimony wherein he testified that Sifers raised and lowered the jack using the pump apparatus. [Doc. 56-1 at 23]. The Court notes that the alleged injury did not occur when Sifers was raising or lowering the jacks. Further, Plaintiff ignores his testimony that he and Sifers were jointly responsible for the jack. Plaintiff testified as follows:

> Q. Did you take responsibility to be in charge of most jobs because of your senior and your –
>
> A. Because of my experience, I took charge of most jobs.
>
> Q. On the day of this, your last day of work, did you take charge of the tasks that you-all were told to perform?
>
> A. To some sort.

[Doc. 56-1 at 5]. Further, during the deposition, the following exchanged occurred:

> Q. So it was you and Sifers on the day of this – of the –when you were jacking the car that the two of you put all these devices up on both sides of the car so the car could be jacked; the two of you did that?
>
> A. Yes. He set –Carmen Sifers set one side and I set the other.
>
> Q. And the goal was to make sure that it was stable.
>
> A. Yes.
>
> Q. And even?
>
> A. Yes.
>
> Q. And you were the senior man leading the job; were you not?
>
> A. Leading the job?
>
> Q. Yeah. You were the leader?
>
> A. No. We worked together.
>
> Q. So you had a joint responsibility, joint, both of you had the responsibility to make sure that that jack and the jack pads and the wooden blocks and everything were placed correctly to ultimately result in evenness?
>
> A. Yes.

[*Id.* at 21]. Plaintiff testified that the assignment was a "two-man job." [*Id.* at 14]. Sifers operated the jack from the work truck, while Plaintiff stood in the gauge of the track to make sure the levels were positioned properly and that the car was level when moving up and down. [*Id.*]. He testified that he does not blame Sifers for the incident. [*Id.* at 29]. He furher acknowledged that he used the jack after the incident, and Defendant submitted evidence that the jack is still in service. [Doc. 34-1 at ¶ 6, Doc. 56-1 at 32].

Accordingly, based on Plaintiff's testimony, the Court does not find that the jack was in the exclusive control of the Defendant, and therefore, res ipsa loquitur is not applicable. *See Ruark*, 916 F.3d at 619 (explaining that res ipsa did not apply because plaintiff had partial control over the drill and the drill was operating properly when he first began using it and worked without incident throughout the day up until the time of the accident). For similar reasons as above, the Court further finds that Plaintiff has not shown that this is the kind of accident that does not ordinarily occur absent negligence on the part of Defendant.

**C.     Negligence**

As mentioned above, in the Complaint, Plaintiff asserts that his injury was caused by Defendant's negligence and further alleges that Defendant failed to warn, train, and supervise Plaintiff and its employees and failed to provide protective gear. In order to recover damages under the FELA, a plaintiff must show: "(1) that he was injured while in the scope of his employment, (2) which employment is in furtherance of the railroad's interstate transportation business, (3) that his employer was negligent, and (4) that his employer's negligence played some part in causing the injury for which compensation is sought under FELA." *Seto,* 2017 WL 4556723, at *8 (other citations omitted).

"Negligence under FELA is a question of federal law, which generally turns on common law principles of negligence and injury." *Sapp v. CSX Transp., Inc.*, 478 F. App'x 961, 964 (6th Cir. 2012) *(quoting Wilhelm v. CSX Transp., Inc.,* 65 F. App'x 973, 976 (6th Cir. 2003)). The common law elements of negligence include "duty, breach, foreseeability, and causation." *Id.* (quoting *Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir. 1990)). "Under familiar law, defendant could not be convicted of negligence, absent proof that such defect was known, or should or could have been known, by defendant, with opportunity to correct it." *Miller,* 317 F.2d at 695. "This rule is applicable to FELA actions where negligence is essential to recovery." *Id.* A plaintiff may establish such element if "the defect was discovered, or should have been discovered, by the exercise of reasonable care or inspection." *Id.*

In the present matter, the Court finds that Plaintiff has not shown negligence.[5] Plaintiff claims that the jack was leaning, but during his deposition, he testified that he was not sure what caused the car to lean. [Doc. 56-1 at 34]. Further, Defendant has put forward evidence showing that it was not reasonably foreseeable that the left side jack would fail. First, Plaintiff testified that he and Sifers inspected the equipment and performed safety lifts to make sure everything was in order, and the "jacks did not move." [Doc. 56-1 at 32]. Plaintiff stated that the incident occurred suddenly and without warning. Following the alleged accident, Plaintiff used the jack again and went underneath the car without incident. [Doc. 56-1 at 32]. Further, Chambers stated, "In fact, the jacks remained in service and would have been taken out of service just like the pads would have been taken out of service if they were bent or torn in any way. Instead the jacks continued to

---

[5] Defendant has put forward evidence, claiming that the incident, as Plaintiff described, is physically impossible. The Court need not decide whether the incident was physically impossible because even if the incident did occur as Plaintiff alleged, Plaintiff has not established that it was caused by Defendant's negligence.

be used in service." [Doc. 34-1 at ¶ 6]. In addition, Sifers stated, "After April 28, 2016, the same jacks continued to be used for jacking cars on approximately 10 to 15 occasions without incident. The jacks always worked perfectly." [Doc. 56-2 at ¶ 3].

Plaintiff has not rebutted the above evidence and has not provided the Court with any evidence linking the jack's alleged failure to Defendant's actions. *Williams v. Grand Trunk W. R.R.*, 352 F. App'x 13, 17 (6th Cir. 2009) ("Williams's evidence regarding negligence is not sufficient because he has not presented any evidence linking the allegedly snow-filled MU receptacle to any action by the defendant."). Accordingly, the Court finds that there are no genuine issues of material fact with respect to Plaintiff's claim of negligence.

Finally, Defendant has moved for summary judgment on Plaintiff's claims that it was negligent in failing to (1) train, warn, or supervise Plaintiff and its employees, and (2) provide Plaintiff with proper personal safety equipment, and/or provide safety equipment for Plaintiff to perform his assigned duties. In addition, Defendant states that there is no reasonable basis for Plaintiff's allegation that Defendant allows unsafe practices to become the standard practice. Plaintiff has not responded to Defendant's arguments. *Guster v. Hamilton Cnty. Dep't of Ed.,* No. 1:02-cv-145, 2004 WL 1854181, at *7 (E.D. Tenn. March 2, 2004) (holding an argument not addressed in the responding party's brief is deemed waived).

Although Plaintiff did not respond to Defendant's arguments, the Court has reviewed Defendant's arguments and the evidence submitted in support thereof and finds no genuine issue of material facts exists as to these claims. First, with respect to Plaintiff's allegations regarding the failure to train, Plaintiff testified during his deposition that he considers himself to be a well-trained, competent, and qualified carman. [Doc. 56-1 at 4]. With respect to the negligent

supervision claim, the Court agrees with Defendant in this case, without an underlying tort, Plaintiff's claim fails. *See Blough v. Hawkins Mkt., Inc.,* 51 F. Supp. 2d 858, 865 (N.D. Ohio 1999) ("First, an underlying requirement in actions for negligent supervision is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer.") (Quoting *Greenberg v. The Life Ins. Co. of Virginia,* 177 F.3d 507, 516–18 (6th Cir. 1999)). Further, as Defendant emphasizes, Plaintiff testified that he does not blame Sifers for what happened. [Doc. 56-1 at 29].

Plaintiff also pleads negligence because Defendant failed to provide him with the necessary and proper protective equipment. Defendant provided Plaintiff with a hard hat, which Plaintiff acknowledged he was wearing at the time of the incident as he testified, "I struck the top of my hard hat underneath the frame of the car." [Doc. 56-1 at 24]. Plaintiff has not stated or argued what additional safety equipment Defendant should have provided.

Finally, Plaintiff alleged that Defendant failed to warn Plaintiff of reasonably foreseeable hazardous conditions existing with Defendant's equipment and that Defendant allowed unsafe practices. In its Motion, Defendant construed this allegation as a failure to warn that being under a rail car constituted a hazardous condition. Plaintiff has not disputed Defendant's construction or argument. Defendant cites Plaintiff's testimony, wherein he states that the "line of fire" means being in the way of potential harm, *see* [Doc. 56-1 at 14], and its Training Code, wherein Defendant warns its employees to "[t]ake care to eliminate placing your body in the line of fire." [Doc. 31-1 at 125]. Plaintiff testified that if a car is being jacked up, an employee does not want to be under the car while this is going on. [Doc. 56-1 at 14]. Accordingly, the Court finds Defendant's arguments well taken and summary judgment will be entered on these claims as well.

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court will **GRANT** Defendant's Motion for Summary Judgment [**Doc. 31**]. A separate judgment will enter **DISMISSING** this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge